**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **DEBRA DIANNA MIDDLETON**  )<br>                                              )<br>           **Plaintiff,**            )<br>                                              )<br>**vs.**                                       )<br>                                              )<br>**JOANNE B. BARNHART**      )<br>*Commissioner of Social Security*  )<br>                                              )<br>           **Defendant.**          )<br>_____) | **CV 05-575-TUC-RCC [CRP]**<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff seeks review of the final decisions of the Commissioner of Social Security that denied her claims of disability and waiver of overpayment recovery. Plaintiff moves for summary judgment. Defendant opposes that motion and files a cross-motion for summary judgment. For the following reasons, this Court recommends that the District Judge, after his independent review and consideration, **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Cross-Motion for Summary Judgment.

**STATEMENT OF FACTS**

On December 2, 1990, Plaintiff suffered multiple injuries in a car accident. Tr. 50, 453. As a result, Plaintiff filed for disability benefits in early 1991. Tr. 50. The Social Security Administration (SSA) denied this application, resulting in Ms. Middleton's request for a hearing before an administrative law judge (ALJ). Tr. 56, 61, 63. On April 10, 1992, the ALJ found Ms. Middleton disabled as of October 1991. Tr. 122-127. In that decision, the ALJ denied benefits prior to October 1991 because of Plaintiff's three months of work activity earlier in 1991. Tr. 122-127.

Plaintiff remained on disability for the next three years, but began working in January

1   1995. Tr. 136-137.  The SSA allows beneficiaries to test their ability to work through a nine-
2   month trial work period (TWP). 20 C.F.R. § 220.170.  The TWP permits individuals to work
3   and still collect full disability benefits. § 220.170.  Should the individual successfully
4   complete the TWP, the 36-month extended period of eligibility (EPE) begins. 20 C.F.R. §
5   220.171.  During the EPE, an individual can earn disability benefits for any month in which
6   she does not engage in substantial gainful activity. § 220.171.

7   Here, Ms. Middleton earned at least $416.50 each month between January and
8   September 1995. Tr, 137.  Thus, a later disability review determined that Ms. Middleton's
9   disability ended in October 1995. Tr. 138.  This meant that Plaintiff successfully completed
10  the TWP in September 1995 and entered the EPE in October 1995. Tr. 138.  In 1999, the
11  SSA asserted that Plaintiff engaged in substantial gainful activity during many months of the
12  EPE, but did not notify the SSA of this income and still collected disability benefits. Tr. 135-
13  141, 571-574.  Consequently, the SSA notified Ms. Middleton in August 1999 that they
14  overpaid her by approximately $11,500. Tr. 571-574.

15  With this letter, the SSA included terms under which Ms. Middleton could appeal
16  their findings or request a waiver of the overpayment. Tr. 571-574.  The letter stipulated that
17  Plaintiff had sixty days from receipt of the letter to request an appeal. Tr. 571-574.
18  Alternatively, Ms. Middleton could request waiver of overpayment recovery if she was not
19  at fault for the overpayment in any way. Tr. 571-574.

20  Ms. Middleton did not file an appeal.  In March 2003, she filed a waiver of
21  overpayment recovery request.  In the request, Plaintiff stated that she did not tell the SSA
22  about her employment income because she knew she could not maintain a full-time job for
23  very long. Tr. 577.  In addition, she agreed to pay back ten dollars per month, provided that
24  the SSA reinstate her disability and deduct the money from those benefits. Tr. 576-583.

25  Accordingly, Plaintiff had filed another application for disability benefits. Tr. 243-
26  245. In her application, Ms. Middleton stated that she was unable to work since August 2001
27  due to Post-traumatic Stress Disorder (PTSD), depression, and back injury. Tr. 182, 243.
28  The SSA denied Plaintiff's application, asserting that her disability was not severe enough

to prevent her from working. Tr. 142, 182-186. On reconsideration, the SSA upheld its initial finding. Tr. 189-192. In addition, the SSA rejected Plaintiff's waiver request. Tr. 592. Plaintiff appealed these findings to an ALJ. Tr. 158.

In the interim, Plaintiff again requested waiver of overpayment recovery in January 2004, stating that the overpayment was not her fault and that she could not afford to pay the money back. Tr. 605-612. Furthermore, Plaintiff asserted that she did not know she had to tell the SSA about any employment during the EPE. Tr. 606. Instead, Ms. Middleton indicated that she believed the SSA would simply deduct any earnings from disability checks. Tr. 606.

In November 2004, an ALJ denied both Plaintiff's waiver of overpayment request and her disability claim. Tr. 16-27, 671. In so doing, the ALJ determined that Ms. Middleton was not without fault in receiving the overpayment. Tr. 671. In addition, the ALJ asserted that Ms. Middleton's disability did not prevent her from engaging in substantial gainful activity. Tr. 27. The SSA Appeals Council declined to review the decisions of the ALJ. Tr. 10, 660. Plaintiff now files the immediate action.

**STANDARD OF REVIEW**

The ALJ decisions to deny waiver and disability must stand unless those decisions are unsupported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995). If evidence is open to more than one interpretation, courts must uphold ALJ decisions. *Id*.

**WAIVER OF OVERPAYMENT ISSUE**

When the SSA determines that it overpaid an individual, that person may appeal the decision within sixty days of notification that the SSA overpaid. 20 C.F.R. § 404.502a, Tr. 573. Alternatively, the individual may request waiver of overpayment. 20 C.F.R. § 404.502a, Tr. 573. In this case, Plaintiff did not appeal the overpayment determination within sixty days. Consequently, the initial determination that the SSA overpaid is binding and not at

1 issue in this case. 20 C.F.R. § 404.905.  Therefore, the only issue regarding overpayment
2 here is whether Ms. Middleton should receive a waiver.

3 An individual may properly receive waiver of overpayment recovery when the
4 overpaid individual is without fault and (1) recovery would defeat the purpose of title II of
5 the Act or (2) be against equity and good conscience. 20 C.F.R. § 404.506(a).  Because there
6 is substantial evidence that Ms. Middleton is not without fault, it is unnecessary to consider
7 these final two elements.

8 In analyzing an individual's fault, the SSA considers "all pertinent circumstances,
9 including the individual's age and intelligence, and any physical, mental, educational, or
10 linguistic limitations." 20 C.F.R. § 404.507.  Additionally, the SSA determines fault by
11 examining whether the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

15 § 404.507.  Furthermore, the overpaid individual has the burden of proving she is without
16 fault. *Anderson v. Sullivan*, 914 F.2d 1121, 1122 (9th Cir. 1990).

17 Here, the ALJ found that Plaintiff's failure to furnish information about her work
18 activity meant she was not without fault. Tr. 670.  There is substantial evidence to support
19 this conclusion.  Beginning in 1995, Plaintiff held a series of jobs, including a full-time job
20 as a construction secretary for most of 1996. Tr. 268-272.  Despite earning over $10,000 in
21 1995 and $16,000 in 1996, she failed to report this employment until April 1999. Tr. 235-
22 236, 268-272.  As noted above, Plaintiff stated that she did not furnish this information
23 because she didn't know she was supposed to. Tr. 606.

24 The record demonstrates, however, that Plaintiff should have known that she needed
25 to report this work activity sooner.  In February 1991, Plaintiff filed an application for
26 disability benefits. Tr. 52.  At that time, she agreed to inform the SSA if she returned to work.
27 Tr. 52.  Furthermore, as noted above, the ALJ decision granting benefits as of October 1991
28 also rejected earlier disability benefits because of Plaintiff's three months of work activity

1 earlier that year. Tr. 122-127. Thus, that decision notified Plaintiff of the importance of
2 reporting her work activity. Finally, in 1993, the SSA's benefit award letter to Plaintiff
3 included a pamphlet explaining what needed to be reported, including work activity. Tr. 130.
4 Consequently, there is substantial evidence to support the ALJ's decision denying waiver of
5 overpayment recovery.

6 Plaintiff suggests in her summary judgment motion, however, that she may not have
7 the capacity to comprehend and remember reporting requirements. As noted above, mental
8 limitations are mentioned as "pertinent circumstances" in the determination of fault. 20
9 C.F.R. § 404.507. Here, though the ALJ asserted in his overpayment decision that he
10 considered "all pertinent circumstances," he included no direct discussion of mental
11 limitations. Tr. 669-671. Even so, an ALJ is not required to issue explicit findings on each
12 of the factors set forth in 20 C.F.R. § 404.507. *Anderson*, 914 F.2d at 1123.

13 Moreover, the ALJ here expressly considered Plaintiff's mental limitations in his
14 separate determination that Ms. Middleton was not disabled, indicating awareness of this
15 factor in his consideration of the overpayment issue. Tr. 19-27. Furthermore, a June 2004
16 psychological examination asserted that Ms. Middleton's remote memory was "good" and
17 that she appears capable of understanding work-related tasks. Tr. 417.

18 That said, some courts recognize that claimants may not be capable of remembering
19 reporting requirements stipulated years earlier. In one such case, the court found it
20 unreasonable to expect a claimant to remember to report when her only notice of this
21 requirement was on the initial disability application. *Jefferson v. Bowen*, 794 F.2d 631, 634
22 (11th Cir. 1986)**.** There, however, the claimant had only a fourth-grade education and
23 minimal literacy. *Id.* at 633. In contrast, the plaintiff here has a GED and some college
24 education. Tr. 621. Moreover, Ms. Middleton received notification of the reporting
25 requirements multiple times. Tr. 52, 125-126, 130. Therefore, substantial evidence exists to
26 support the ALJ's decision.

27
28

1 **DISABILITY ISSUE**

2 The United States Code defines disability as "inability to engage in substantial gainful 3 activity by reason of any medically determinable physical or mental impairment which...can 4 be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 5 423(d)(1)(A).  Even if an applicant cannot perform her previous work, she will not qualify 6 as disabled if there is other substantial gainful work she could perform. 42 U.S.C. § 7 423(d)(2)(A).  Because there is substantial evidence supporting the ALJ's conclusion that 8 Plaintiff can perform substantial gainful work, this Court recommends rejecting Plaintiff's 9 disability claim.

10 At the time of filing for disability in 2001, Plaintiff had no treating medical sources. 11 Tr. 20, 454.  Consequently, Dr. Irwin Steinberg examined Plaintiff in February 2002 for 12 Disability Determination Services. Tr. 453. Dr. Steinberg's detailed report stated that despite 13 some degeneration, Ms. Middleton could walk well and accomplish movements "reasonably 14 readily." Tr. 458-459.

15 In addition, residual functional capacity (RFC) assessments in 2002 and 2003 16 indicated that Plaintiff retained the ability to occasionally lift twenty pounds and frequently 17 lift ten pounds. Tr. 521, 530.  Moreover, the RFCs asserted that Ms. Middleton could sit or 18 stand for about six hours in an eight-hour work day. Tr. 521, 530.

19 Dr. Machelle Martinez evaluated Plaintiff's mental condition in May 2004, at the 20 request of the ALJ. Tr. 419-420.  Dr. Martinez asserted that Plaintiff had only a slight 21 impairment in regard to understanding, remembering, and carrying out simple or detailed 22 instructions. Tr. 419.  Furthermore, Dr. Martinez found that Ms. Middleton had no extreme 23 impairments. Tr. 420. Dr. Martinez did note, however, that Plaintiff had moderate or marked 24 trouble interacting with others. Tr. 420.

25 At the October 2004 ALJ hearing, an impartial vocational expert (VE) testified that 26 though Plaintiff could not engage in her past work, she could become a data entry or file 27 clerk. Tr. 656.  The VE's opinion included consideration of the RFC assessments, Dr. 28 Steinberg's report, and Dr. Martinez's opinion of Plaintiff's mental condition. Tr. 655-656.

1   In contrast, two doctors wrote letters stating that they believed Plaintiff should qualify
2   for disability. Tr. 415.  Dr. David Flieger, a dermatologist, indicated that he treated Plaintiff
3   for psoriasis in July 2003. Tr. 415.  Dr. Flieger recommended Plaintiff for disability benefits,
4   suggesting that her depression and worsening psoriasis were "serious problems." Tr. 415.
5   Additionally, in January 2006, Dr. John Klein asserted his belief that Ms. Middleton could
6   not engage in substantial gainful activity because of her back pain.

7   Even so, these statements do not eliminate the substantial evidence supporting the
8   ALJ's decision.  A doctors' opinion that an applicant is disabled does not mean the SSA must
9   accept disability. 20 C.F.R. § 404.1527(e)(1).  Furthermore, these assertions are afforded no
10  special significance in the disability determination. 20 C.F.R. § 404.1527(e)(3).

11  Additionally, the fact that Dr. Klein's letter advocating disability came over one year
12  after the ALJ's ruling presents a problem for Plaintiff.  In order for this Court to consider Dr.
13  Klein's letter, Ms. Middleton must show that this new evidence is material and that she had
14  good cause for not bringing this evidence sooner. 42 U.S.C. § 405(g).

15  New evidence is material when it bears "directly and substantially on the matter in
16  dispute." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982).  Here, Dr. Klein's letter
17  concerns Plaintiff's back pain, a chief issue in the ALJ's disability determination. Therefore,
18  it qualifies as material evidence.

19  Unfortunately for Plaintiff, however, she fails to establish good cause for introducing
20  this new evidence.  As noted by the Ninth Circuit, "[a] claimant does not meet the good cause
21  requirement by merely obtaining a more favorable report once his or her claim has been
22  denied." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001).  In addition, the claimant
23  must show good cause for not seeking the doctor's opinion before the ALJ's hearing. *Id*.

24  Here, Plaintiff had no treating sources at the time she filed for disability. Tr. 20, 454.
25  As Ms. Middleton herself indicates in a February 2004 letter, however, she did consult
26  doctors on multiple occasions after she applied. Tr. 288.  In that letter, Plaintiff states that
27  these doctors informed her that they could find nothing wrong with her back. Tr. 288.  Thus,
28  in light of *Mayes*, Plaintiff fails to establish good cause.  Dr. Klein's letter is simply a more

1 favorable report that Ms. Middleton obtained after her claim was denied.

2 Finally, even if Plaintiff established good cause for introducing Dr. Klein's letter, the
3 outcome likely would not change. As noted above, the standard of review used by this Court
4 does not require that a preponderance of the evidence support the ALJ's conclusion.
5 *Andrews*, 53 F.3d at 1039-1040. Instead, so long as an ALJ's decision is supported by more
6 than a mere scintilla of evidence, courts must uphold it. *Id*. Here, because substantial
7 evidence supports the ALJ's determination, this Court recommends rejecting Ms.
8 Middleton's claim.

9 **CONCLUSION**

10 Though Plaintiff has some mental and physical impairment, a finding of disability is
11 inappropriate. At the time of filing for disability, no doctors treated Plaintiff for her physical
12 condition. Additionally, RFC assessments and Dr. Steinberg's report indicate she retains
13 adequate physical function. Furthermore, Dr. Martinez found that Plaintiff's only marked
14 or moderate mental impairments involved interaction with people. These impairments are
15 of lesser concern in occupations approved for Plaintiff by the vocational expert, like data
16 entry or filing.

17 Moreover, Plaintiff fails to meet her burden of demonstrating that she is without fault
18 in receiving overpayments. Ms. Middleton received ample notification of the reporting
19 requirements, including a past ALJ decision denying her benefits on the basis of work
20 activity. In addition, the record indicates that Plaintiff is well-educated and retains sound
21 long-term memory function. Therefore, Ms. Middleton should have known that she needed
22 to report her work activity. Accordingly, substantial evidence exists to affirm the ALJ's
23 decisions.

24 **RECOMMENDATION**

25 For the foregoing reasons, this Court recommends that the District Judge, after its
26 independent review,

27 1) Deny Petitioner's Motion for Summary Judgment [Dkt 24]
28 2) Grant the Commissioner's Cross-Motion for Summary Judgment [Dkt 29]

Pursuant to Title 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should use the following case number: **CV 05-575-TUC-RCC.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

Dated this 28th day of June, 2007.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE